UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN DAVID VAN KIRK and
JACQUELINE M. VAN KIRK,

            Plaintiffs,

v.

BUFFY JO WELDON,

            Defendant.
_____/

Civil Action No. 20-11761
Hon. Terrence G. Berg
Magistrate Judge David R. Grand

### REPORT AND RECOMMENDATION TO DISMISS PLAINTIFFS' CASE FOR LACK OF SUBJECT MATTER JURISDICTION, AND TO DENY DEFENDANT'S MOTION TO DISMISS (ECF No. 5) AS MOOT

*Pro se* plaintiffs Brian David Van Kirk and Jacqueline M. Van Kirk (the "Van Kirks") bring this civil rights action against the Cheboygan County Treasurer, defendant Buffy Jo Weldon ("Weldon"), alleging that a tax foreclosure sale of their property was conducted in violation of their 14th Amendment due process rights.  Regardless of their characterization of the foreclosure sale, at bottom, the Van Kirks challenge the underlying property tax assessments and the collection of those taxes through the foreclosure sale.  In short, the Van Kirks allege that their property was "fraudulently assessed" as if it was a "waterfront lot" when it was actually a "water view lot," and that the tax foreclosure sale should not have proceeded because the improper assessments were a "fraudulent taxation scheme."  In their "Closing Statement," the Van Kirk's succinctly summarize their claim: "[w]ithout a legal assessment, there cannot be a legal foreclosure."

Unfortunately for the Van Kirks, the Tax Injunction Act and principles of comity

deprive this Court of subject matter jurisdiction over claims like theirs which challenge the assessment and collection of state property taxes. Accordingly, the Van Kirks' case should be dismissed.[1]

## I.    BACKGROUND

### A.    Factual Background

On July 24, 2010, the Van Kirks were the winning bidders at a tax auction on Property ID 251-W23-000-219-00 ("Lot 219") located in Wolverine, Michigan, in Cheboygan County. (ECF No. 1, PageID.5). Their winning bid amount was $8,200.00 for Lot 219, which, they allege, the taxing authority had "advertised, assessed, and taxed" "as a waterfront lot." (*Id.*). Over a year later, the Van Kirks began a lengthy campaign of challenging Lot 219's property tax assessments. (*Id.*).

First, in March 2012, they "appealed [their] lot's property assessment to the Nunda Township Board of Review," which determined the property was "legally and correctly assessed." (*Id.*). The Van Kirks allege that their "appeal was denied." (*Id.*).

Next, the Van Kirks allege that in June 2012, they filed a tax evaluation appeal with the Michigan Tax Tribunal. (*Id.*). They claim that they had a hearing on February 11, 2013, before Sara J. Basso, who found that Lot 219 "had lake frontage and was not a waterfront lot, as [the Van Kirks] were led to believe," but that Basso "still upheld the lot's evaluation, even though it is assessed as being a waterfront lot." (*Id.*). The Van Kirks claim, "[a] waterfront lot and a lot that fronts on a lake (lakeview) are two entirely different

---

[1] An Order of Reference was entered on June 16, 2020, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (ECF No. 4).

classifications of property. This is something we did not catch at the time. For we still believed we owned a waterfront lot." (*Id.*). The Van Kirks claim that they appealed Basso's "Proposed Opinion and Order" within 21 days, but that "this too was denied." (*Id.*).

The Van Kirks' allegations fast-forward about two years to March 2015. They claim that at that time, they "discovered the Cheboygan County Parcel Map & Aerial Photos on the county's website" which show they "did not own a waterfront lot" because "there are approximately 160 feet of intervening land between the boundary of [Lot 219] and the water's edge." (*Id.*, PageID.5, 7). On May 20, 2015, the Van Kirks wrote to the Michigan Department of Treasury, explaining that they "did not own a waterfront lot." (*Id.*, PageID.7). However, about a week later, the Michigan Tax Commission's Executive Director responded, stating that the "issue" was not within the Commission's "purview" and that the Commission would "take no further action on this matter . . ." (*Id.*).

Over the next few months, the Van Kirks e-mailed the Nunda Township Assessor to inquire about obtaining title to the "intervening land." (*Id.*). The Assessor responded that he could not provide them with that title, and that he would not change their assessment unless directed to do so by a court or the state of Michigan. (*Id.*).

On November 6, 2015, the Van Kirks sent a letter and "supporting documents" to the Michigan Department of Treasury's Fraud Unit, alleging that they were defrauded on the sale of Lot 219, that "it was fraudulently assessed," and that they "would like to be made whole." (*Id.*). However, they never received a response. (*Id.*).

The Van Kirks claim that it then "was obvious, by the apparent collusion, [that they]

3

[] would have to file a complaint regarding this fraudulent conveyance of [L]ot 219 and it's [sic] fraudulent assessment." (*Id.*). First, though, believing they would face further "collusion and public corruption within the judicial and executive branches of the Michigan government," the Van Kirks wrote to the FBI about their complaints. (*Id.*). Ultimately, on March 14, 2016, they filed a civil action against the then Cheboygan County Treasurer, Linda Cronan, in Michigan's Court of Claims, Case No. 16-000059-MZ. (*Id.*). That case was assigned to the Honorable Stephen Borrello. (*Id.*). Although the Van Kirks contend that Cronan "never proved that [Lot 219] was a waterfront lot," Judge Borrello granted Cronan's summary disposition motion that she had filed in lieu of an answer, and dismissed the case. (*Id.*, PageID.8). The Van Kirks did not appeal. (*Id.*). Instead, believing "that [they] would endure more of the same [injustice] if [they] were to appeal, [they] simply chose to not pay the fraudulently assessed taxes on [Lot 219]. [They] figured it would force the treasurer to provide [them] with title to the 160-foot strip of land between [Lot 219] and the lake." (*Id.*).

Not surprisingly, sometime after June 15, 2018, the Van Kirks received notices that a foreclosure sale of Lot 219 would take place on February 11, 2019, due to their non-payment of the assessed property taxes. (*Id.*). On September 4, 2018, the Van Kirks sent a letter to defendant Weldon, who had become the Cheboygan County Treasurer, providing documentation that they claim "rebutted the presumption that [their] lot was a waterfront lot," and alleging "fraudulent assessment and taxation, not only of [Lot 219] but all of the lots that are not waterfront." (*Id.*).

A foreclosure hearing took place on February 11, 2019, but the Van Kirks arrived

4

15 minutes late and the Circuit Court had already entered a judgment of foreclosure. (*Id.*). The Van Kirks claim they were later given a "True Copy of the Circuit Court's judgment of foreclosure," but that it was missing certain required information, such as their names, the property's address, and the amount of past-due taxes. (*Id.*, PageID.8-9). The Van Kirks then wrote to the FBI, copying Weldon. (*Id.*, PageID.9). Weldon responded, apparently advising the Van Kirks about the redemption period, stating that "if the delinquent taxes are not paid by April 1, 2019, [] there is no further remedy." (*Id.*). The Van Kirks assert, "[Weldon] has this right if our lot was assessed legally, and we owned the land to the water's edge . . . But that is not the case!" (*Id.*).

On March 5, 2019, the Van Kirks wrote to Weldon, "explaining that [they] would not be paying [their] delinquent taxes on the fraudulently assessed lot." (*Id.*). They also "provided an aerial image [] that [they claim] clearly and unequivocally proves that [they] did not own the waterfront land that [they] were being assessed and taxed on." (*Id.*).

On September 18, 2019, the Van Kirks filed a complaint in the Michigan Court of Claims against Weldon, Case No. 19-000142-MM. (*Id.*). That case was assigned to the Honorable Michael Kelley, who granted Weldon's summary disposition motion based on a lack of subject matter jurisdiction. (*Id.*). On January 2, 2020, Judge Kelley denied the Van Kirks' motion for relief from judgment. (*Id.*).

### B.     *Procedural Background*

On June 19, 2020, the Van Kirks commenced the instant action against Weldon, claiming that she "should have [] canceled the foreclosure . . . but went ahead and fraudulently pursued an illegal foreclosure on [their] lot" in violation of their "Substantive

5

Due Process rights embodied in the 14th Amendment." (*Id.*). The Van Kirks' complaint and other filings make clear that, at bottom, they challenge the allegedly improper assessment of the property taxes, and the use of the tax foreclosure sale to collect them. Indeed, in their filing labeled "Closing Statement," the Van Kirks succinctly summarize their claim as follows: "Weldon[] has failed multiple times to provide evidence to prove that [L]ot 219 [] was legally assessed. . . . Without a legal assessment, there cannot be a legal foreclosure." (ECF No. 10, PageID.88; *see also* ECF No. 1, PageID.4 (alleging Weldon "failed to show that [they] owned a waterfront lot and that it was legally assessed, a condition necessary for a legal foreclosure.")). Among other relief, the Van Kirks seek (1) a refund of the monies they paid to purchase Lot 219, (2) a refund of the property taxes they paid on Lot 219, (3) a refund of monies they spent to improve Lot 219, (4) accrued interest in the amount of $22,220.05, and (5) punitive damages of $61,600.00. (ECF No. 1, PageID.12).

On July 16, 2020, Weldon filed a motion to dismiss, arguing that the Van Kirks' claims (1) are barred by the statute of limitations, and (2) fail to state a 14th Amendment due process claim. (ECF No. 5). That motion is fully briefed. (ECF Nos. 8, 9). However, in researching the issues raised in Weldon's motion, the Court became concerned about a more fundamental issue – whether it has subject matter jurisdiction over the Van Kirks' claims. *See Valinski v. Detroit Edison*, 197 F. App'x 403, 405 (6th Cir. 2006) ("Federal courts have an 'independent obligation to ensure that subject matter jurisdiction exists.'") (quoting *Olden v. LaFarge Corp.*, 383 F.3d 495, 498 (6th Cir. 2004)). Specifically, the Court questioned whether the Tax Injunction Act, 28 U.S.C. § 1341, and principles of

comity deprived it of subject matter jurisdiction over the Van Kirks' claims.

Consequently, on December 10, 2020, the Court issued an Order to Show Cause, directing the Van Kirks to show cause as to why the Court should not dismiss their case for lack of subject matter jurisdiction. (ECF No. 12). The Van Kirks filed a response to the Order to Show Cause on December 13, 2020, and, at the Court's direction, Weldon filed a response to the Van Kirks' filing on January 8, 2021. (ECF Nos. 13, 15).

For the reasons that follow, the Court lacks subject matter jurisdiction over the Van Kirks' claims. Accordingly, this action should be dismissed, and Weldon's motion to dismiss (ECF No. 5) should be denied as moot.

## II.   APPLICABLE LEGAL STANDARDS

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). *See also Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005). "It is to be presumed that a cause lies outside this limited jurisdiction [] and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377. *See also Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). As "courts of limited jurisdiction, [] Congress may divest them of jurisdiction." *Anderton v. Bannock County*, No. 14-00114, 2015 WL 428069, at *3 (D. Idaho Feb. 2, 2015). "The Tax Injunction Act is an example of such a divestiture." *Id.*

The Tax Injunction Act ("TIA") grows out of Congress' recognition "that the autonomy and fiscal stability of the States survive best when state tax systems are not

subject to scrutiny in federal courts." *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 102-03 (1981). Indeed, the Sixth Circuit has explained that the TIA "was designed expressly to restrict the jurisdiction of the district courts of the United States over suits relating to the collection of State taxes." *Hibbs v. Winn*, 542 U.S. 88, 104 (2004).

The TIA provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Thus, the TIA has two elements – it applies where (1) the challenge is to the "assessment, levy or collection" of any state tax; and (2) a "plain, speedy and efficient" remedy may be pursued in the state courts. *Id.* As discussed below, *infra* at 12-14, as long as the TIA's two elements are satisfied, its bar clearly applies to claims arising under the United States Constitution.

In addition, comity principles preclude federal courts from awarding damages for state tax collection efforts that allegedly violate the United States Constitution and other federal laws. *See Fair Assessment in Real Estate Ass'n, Inc.*, 454 U.S. at 105-06. As the Supreme Court held in *Fair Assessment*:

> [O]ur comity cases have thus far barred federal courts from granting injunctive and declaratory relief in state tax cases.... [W]e decide today that the principle of comity bars federal courts from granting damages relief in such cases....
>
> [W]e hold that taxpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts.

*Id.* at 107. *See also Rafaeli, LLC v. Wayne Co.*, No. 14-13958, 2015 WL 3522546, at *5 (E.D. Mich. June 4, 2015).

8

In a very recent decision, the Sixth Circuit provided guidance that is directly on point here:

> The [Tax Injunction] Act is "first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." []  To that end, the TIA restricts suits seeking injunctions or declaratory judgments in federal court pertaining to the collection of state taxes, including challenges to a state's seizure or forfeiture of a delinquent taxpayer's property. []
>
> Still, Congress did not enact the TIA "'to prevent federal-court interference with all aspects of state tax administration,'" **but instead "to stop litigants from using federal courts to circumvent States' 'pay without delay, then sue for a refund' regimes."**

*Freed v. Thomas*, 976 F.3d 729, 734-35 (emphasis added) (internal citations omitted).

Merely characterizing a taxing authority's conduct as "unconstitutional" is clearly not enough to establish this Court's subject matter jurisdiction over a claim that is otherwise subject to the TIA's jurisdictional bar.  *See, e.g., Pegross v. Oakland County Treasurer*, 592 F. App'x 380, 381 (6th Cir. 2014) ("mere citations to 42 U.S.C. § 1983 or the Fourteenth Amendment [can]not create federal court jurisdiction, [if] the claims [as] alleged [are] barred by principles of comity and the TIA"); *Rafaeli, LLC*, 2015 WL 3522546, at *6-9 (state court remedies were available to plaintiff alleging violation of due process, takings, and equal protection claims; thus, plaintiff's claims were barred by TIA).

### III. ANALYSIS

#### A. The Van Kirks' Claims Challenge the Assessment and Collection of a Property Tax

The Van Kirks' allegations squarely raise the type of claim over which this Court lacks subject matter jurisdiction under the TIA.  As explained above, the TIA divests this

Court of subject matter jurisdiction over suits relating to the assessment and collection of state taxes, yet the Van Kirks' claims revolve around their insistence that the unpaid property taxes on Lot 219 that led to the Lot's foreclosure were improperly assessed.  (*See, e.g.*, ECF No. 1, PageID.5 ("we appealed our lot's property assessment to the Nunda Township Board of Review"); 7 (alleging that they advised the Michigan Department of Treasury's Fraud Unit that Lot 219 had been "fraudulently assessed"); 8 (admitting that they "simply chose to not pay the fraudulently assessed taxes[2] on [Lot 219]" and describing their September 4, 2018 letter to Weldon as complaining about the impending foreclosure sale because of "fraudulent assessment and taxation"); 9 (asserting that the redemption period should only apply "if our lot was assessed legally" and alleging that they advised Weldon on March 5, 2019, *after the foreclosure sale*, they "would not be paying [their] delinquent taxes on the fraudulently assessed lot.")).

The Van Kirks cannot overcome the TIA by framing their claims as a challenge to the foreclosure sale's constitutionality.  First, they admit that the basis of their challenge to the foreclosure sale is their underlying challenge to the property tax assessments.  (*See, e.g.*, ECF No. 10, PageID.88) ("Weldon[] has failed multiple times to provide evidence to prove that [L]ot 219 [] was legally assessed. . . . Without a legal assessment, there cannot be a legal foreclosure."); ECF No. 1, PageID.4 (alleging that Weldon "failed to show that [they] owned a waterfront lot and that it was legally assessed, a condition necessary for a

---

[2] This allegation of the Van Kirks' is particularly damning to their attempt to bring their claims in this federal district court.  As noted above, the Sixth Circuit has recently explained that one of the TIA's purposes is "to stop litigants from using federal courts to circumvent States' 'pay without delay, then sue for a refund' regimes." *Freed*, 976 F.3d at 734-35.

10

legal foreclosure."). Moreover, even ignoring the underlying challenge to the assessments themselves, the TIA would still bar this Court from hearing the Van Kirks' challenges to the foreclosure sale because there is no dispute that that proceeding was part and parcel of the state property tax collection process. This proposition is supported by ample recent Eastern District of Michigan case law. For example, in *Hammoud v. County of Wayne*, No 15-14461, 2016 WL 4560635 (E.D. Mich. 2016), *aff'd* 697 F. App'x 445 (6th Cir. 2017), the plaintiffs challenged completed tax foreclosure proceedings on the basis that they had not received notice of tax delinquencies and did not have a meaningful opportunity to be heard. The district court found that those claims were barred by the TIA because, "[t]o grant the relief plaintiffs seek—to undo the tax foreclosures—would certainly 'enjoin, suspend or restrain the assessment, levy or collection of a[ ] tax under State law.'" *Hammoud*, 2016 WL 4560635, at *4 (citing *Pegross*, 592 F. App'x at 384-85 (Tax Injunction Act bars federal court jurisdiction to enjoin tax lien foreclosures)). *See also Wright v. Pappas*, 256 F.3d 635, 637 (7th Cir. 2001) ("A lien sale is a mode of tax collection; and so an action to enjoin it, or declare it illegal, or rescind it, or perhaps even just obtain damages on the ground of its illegality, would be barred by the [Tax Injunction] Act ....").[3]

Because the Van Kirks challenge the assessment and collection of a property tax, the first element of the TIA analysis is satisfied.

---

[3] These cases address the Van Kirks' unpersuasive argument in their Order to Show Cause response that their claim is principally about a "deprivation" of their constitutional rights that is merely "tax related." (ECF No. 13, PageID.106, 108).

### B. A Plain, Speedy and Efficient Remedy Exists in the State Courts

Notwithstanding the above analysis, the TIA would not apply if the Van Kirks can show that a "plain, speedy and efficient" remedy did not exist in the state courts for their challenge. Where a state provides a mechanism for an aggrieved taxpayer to seek a "full hearing and judicial determination" at which "any and all constitutional objections to the tax" can be raised, it affords a "plain, speedy and efficient" remedy. *Rosewell v. La Salle Nat'l Bank*, 450 U.S. 503, 515 n.19 (1981). The relevant portions of Michigan's General Property Tax Act ("GPTA") make clear that such a remedy was available to the Van Kirks in the Cheboygan County Circuit Court:

> (2) A person claiming an interest in a parcel of property set forth in the petition for foreclosure may contest the validity or correctness of the forfeited unpaid delinquent taxes, interest, penalties, and fees for 1 or more of the following reasons:
>
> (a) No law authorizes the tax.
>
> (b) The person appointed to decide whether a tax will be levied under a law of this state acted without jurisdiction, or did not impose the tax in question.
>
> (c) The property was exempt from the tax in question, or the tax was not legally levied.
>
> (d) The tax has been paid within the time limited by law for payment or redemption.
>
> (e) The tax was assessed fraudulently.
>
> (f) The description of the property used in the assessment was so indefinite or erroneous that the forfeiture was void.
>
> (3) A person claiming an interest in a parcel of property set forth in the petition for foreclosure who desires to contest that petition shall file written objections with the clerk of the circuit court and serve

> those objections on the foreclosing governmental unit before the date of the hearing required under this section.

M.C.L. § 211.78k(2), (3).

Thus, the Van Kirks could have brought their instant claims, which arise under the United States Constitution, in the Cheboygan County Circuit Court. While federal district courts have "original" jurisdiction over claims arising under the United States Constitution and federal laws, they do not have "exclusive" jurisdiction over such claims. 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Rather, federal and state courts have "concurrent" jurisdiction over such claims. *See, e.g., Michigan Chamber of Commerce v. Land*, 725 F. Supp. 2d 665, 680 (W.D. Mich. 2010) ("The federal courts and the state courts of Michigan generally have concurrent jurisdiction to adjudicate federal constitutional claims . . ."); *Bates v. Van Buren Twp.*, 122 F. App'x 803, 807 (6th Cir. 2004) ("state and federal courts have concurrent jurisdiction over federal constitutional issues."). This means that nothing prevented the Van Kirks from raising their federal due process claims in the Cheboygan County Circuit Court. *See Nat'l Private Truck Council, Inc. v. Oklahoma Tax Comm'n*, 515 U.S. 582, 588 (1995) ("the Tax Injunction Act does not prohibit state courts from entertaining § 1983 suits that seek to enjoin the collection of state taxes."); *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 821 (6th Cir. 2017) (holding that taxpayers were "not barred from bringing their [Fifth Amendment claims] in the state circuit court and thus were not deprived of a state forum for vindicating their federal constitutional rights."); *Pegross*, 592 F. App'x at 381 ("mere citations to 42 U.S.C. § 1983

13

or the Fourteenth Amendment [can]not create federal court jurisdiction, [if] the claims [as] alleged [are] barred by principles of comity and the TIA"); *Rafaeli, LLC*, 2015 WL 3522546, at *6-9 (state court remedies were available to plaintiff alleging violation of federal due process, takings, and equal protection claims; thus, plaintiff's claims were barred by TIA).

M.C.L. § 211.78k(7) also provides that "[t]he foreclosing governmental unit or a person claiming to have a property interest under section 78i in property foreclosed under this section may appeal the circuit court's order or the circuit court's judgment foreclosing property to the court of appeals." M.C.L. § 211.78k(7). Any appeal of the Michigan Court of Appeals decision would need to be made to the Michigan Supreme Court. *See, e.g., Rose v. Oakland Cty. Treasurer*, No. 19-13066, 2020 WL 871304, at *6 (E.D. Mich., February 21, 2020) (dismissing plaintiff's constitutional challenge to a tax foreclosure when she "never pursued an appeal . . . in the Michigan Supreme Court . . ."). From there, a still-dissatisfied party can get into federal court, but only "through a petition for a *writ of certiorari* to the Supreme Court, not via a civil action filed in a federal district court." *Id.* at *4.

In sum, a plain, speedy and efficient remedy for the Van Kirks' instant constitutional claims was available to them, starting in the Cheboygan County Circuit Court. That the Van Kirks pursued relief in a different court that lacked jurisdiction over their claims, *see supra* at 5, does not render the Circuit Court and various levels of state appellate review "unavailable." Accordingly, the second element of the TIA analysis is satisfied.

Because the Van Kirks' claims challenge the assessment and collection of a state

14

tax, and because a plain, speedy and efficient remedy in the Michigan state courts was available to them, the TIA divests this Court of subject matter jurisdiction. Accordingly, this action should be dismissed, and Weldon's motion to dismiss (ECF No. 5) should be denied as moot.

## IV. CONCLUSION

For the reasons stated above, the Court recommends that this action be **DISMISSED** for lack of subject matter jurisdiction, and that Weldon's motion to dismiss **(ECF No. 5)** be **DENIED AS MOOT**.

Dated: January 19, 2021                         s/David R. Grand
Ann Arbor, Michigan                             DAVID R. GRAND
                                                United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any

15

objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. See Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 19, 2021.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
